DANIEL B. FRAZIER COMPANY, A CORPORATION OF NEW JERSEY, PROSECUTOR, v. TOWNSHIP OF LONG BEACH, IN THE COUNTY OF OCEAN, ETC., DEFENDANTS.

Decided March 28, 1932.

For the motion, *Howard Ewart.*

*Contra, Joseph H. Carr.*

BODINE, J.   For all practical purposes all five cases involving the taxation of lands of the Daniel B. Frazier Company in Long Beach township, Ocean county, New Jersey, stand on the same footing and are here dealt with.

The township of Long Beach filed five separate bills in equity to foreclose certain tax sale certificates acquired in December of 1929, covering lands of the prosecutor which had been sold pursuant to law for unpaid taxes.   The answers in Chancery challenged the validity of the tax sales. Under chapter 202 (*Pamph. L.* 1925, *p.* 480), the answer will be struck unless the defendant obtains a writ of *certiorari* to review the validity of the tax sale within four months from the date of the filing of the answer in the Chancery proceeding.   In order that the defendant should not be deprived of such rights as might exist by the mere passage of time, the application being tardy, and because it was apparent that by reason of the delay a rule to show cause might not be effective, the writ was allowed on *ex parte* affidavits.

The right of the municipality to move for the vacation of the *allocatur* is clear;   also the right of the justice granting the same to vacate the same.   Rule 170, of the Supreme Court (*Winegrath* v. *Fairview,* 77 *N. J. L.* 448; 72 *Atl. Rep.* 91), where Mr. Justice Minturn said: "The statute 5 and 6 (*W. & M.*) expressly established the practice of applying for the writ to the justice at chambers, and required him, if he allowed it, to endorse thereon his allowance, to which act the

term *allocatur* was applied. It will be perceived, therefore, that the *allocatur* to the writ is, in effect, but a substitute for the earlier common law *fiat,* which, like all orders or rules made by a single justice of the king's bench, was, until return made to the writ, within the power of the justice granting it to amend, modify or recall."

No return was made to any of the writs and counsel for the defendant asked for further time for this purpose, if the *allocatur* was not vacated, as he had a right so to do under rule 170.

The application for the writ of *certiorari* was predicated upon the following grounds: (1) The tax sale was invalid; (2) the notice of the tax sale was invalid as it contained no statement of the years the taxes became payable for which the sale was being made; (3) the amount of interest stated was excessive; (4) the description was insufficient; (5) the notice of sale was not posted in five of the most public places; (6) no list was made up pursuant to sections 17, 18, 23 and 26 of chapter 237 *Pamph. L.* 1918; (7) no record of the sale was made as required by law; (8) the sale was ineffective because the attempt was made to sell for 1927 taxes; (9) the certificate of sale contains no adequate description; (10) the certificate contains no averment that there were no other bidders.

The facts developed by the defendants' depositions indicate that the Daniel B. Frazier Company is a persistent and continuous evader of tax obligations, and that the property in question is sand dunes held for speculative purposes. The assessment of the taxes in question was appealed to the county board of taxes and reductions secured.

The tax sale was held November 19th, 1928. Previous to the sale, the collector of taxes made up a list in which the lands subject to sale were described according to the description set forth in the 1927 duplicate, together with the name or names of the owners of said premises and the amount of all taxes and assessments which were a lien on July 1st, 1928. This list was subsequently turned over to the printer

and a notice of sale made up. A copy of this notice of sale was thereafter used by the collector of taxes as his list and on it was noted the record of properties redeemed before or at the sale and the results of the sale itself. The notice of sale was published in the Tuckerton Beacon, a newspaper circulating in the township of Long Beach, once in each of the four calendar weeks preceding the sale. Copies of the notice of sale were posted in seven public places within the township on or before October 27th, 1928, and further copies of the notice of sale were mailed to each of the owners.

There were no other bidders than the township at the sales in question.

The tax sale certificates were made up' for each of the properties sold and delivered to the township of Long Beach subsequent to the sale and were recorded. Notations to the effect that sale was made to the township were made by the collector on the tax duplicates for 1927, and on the duplicates for 1928, 1929 and 1930.

The Tax Sale Revision act of 1918 provides as follows: "No sale of lands for municipal liens heretofore or hereafter made, shall be set aside * * * because of insufficient description in the original entry of the lien, or in the list made up for the sale, or because of a mistake in or omission in the name of the owner, or because of the failure of the clerk or any municipal officer to record the proceedings, relative to the sale, if it shall appear by other legal evidence that the land sold was in fact that assessed, and that the sale was made pursuant to law * * *." *Comp. Stat.* 1924, *p.* 3538, §§ 208-44a (56); *Pamph. L.* 1918, *ch.* 237, *p.* 898.

The proofs show that there was substantial compliance with the legislative requirements in that all acts necessary to be done by the collector of taxes were in fact done with the exception of actually making up a complete record of the proceedings. Such substantial compliance brings the proceedings within the terms of the statute and they were in all respects legal and binding on the prosecutor.

It was proved and not controverted that the township offi-

cers frequently requested the payment of the taxes in question and made known to the prosecutor the embarrassment incident to the delay in payment, because of the inability of the township to meet tax anticipation notes which it had negotiated and which were long overdue to the great detriment of banks affording accommodation to the township.

The delay in resorting to foreclosure proceedings was due to the repeated promises and assurances of the president of the Frazier company that the taxes would be paid and that accommodation had been secured from out of town banks to refinance the Frazier company and provide the money needed for settlement of the taxes.

The Frazier company owes about sixty-five or seventy per cent. of the townships' unpaid taxes. The attempt to challenge the validity of the taxes, in the light of the admission of liability frequently made, seems without merit. Having recognized the validity of the obligation and the manner in which the township's right has been asserted it is now too late to assert a right to a discretionary writ to review that which the Frazier company has conceded imposed a valid and binding obligation upon it which it was more than willing to pay, if like Mr. MacCauber, it could have borrowed the money.

The fanciful irregularities suggested in the township proceedings for the collection and sale for taxes seem due to the circumstances that the township is not a large municipality with voluminous records kept by skilled clerks. The essential records were, however, kept. The precise form and style of writing the records is immaterial under the statute above referred to, but at all events since there was an absolute recognition of the obligation and the rights arising from the sale and repeated requests for further time to secure the funds to make the payments due, it would seem that the *allocatur* was improvidently granted. The power to vacate is clear.

The *allocatur* is, therefore, vacated, with costs.